IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PACIFIC EYE INSTITUTE, A MEDICAL GROUP, INC., | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 3:24-cv-03079-S |
| HARTFORD FIRE INSURANCE COMPANY, | § § § § | |
| *Defendant*. | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Pacific Eye Institute, a Medical Group, Inc. ("PEI" or "Plaintiff") hereby files this First Amended Complaint against Defendant Hartford Fire Insurance Company ("Hartford") and would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff PEI is a California corporation with its principal place of business in California.

2. Defendant Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Hartford is engaged in the business of insurance in the state of Texas. Hartford may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

### II.   JURISDICTION & VENUE

3. The foregoing allegations are incorporated herein by reference.

4. This Court has jurisdiction under 28 U.S.C. § 1332(a) because: (1) Hartford is not a citizen of any state of which Plaintiff is also a citizen; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Hartford is an insurer doing business in the Northern District of Texas, where Hartford regularly issues policies of insurance to Texas insureds, like Plaintiff.

6. Venue is also proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Hartford is subject to personal jurisdiction in this district.

### III. HARTFORD OWES INSURANCE COVERAGE FOR LOSS & DAMAGE TO PLAINTIFF'S AMBULATORY SURGERY CENTER FROM HURRICANE HILARY

**A. Hartford's Policy Provides "All Risk" Coverage For Physical Loss Or Damage To Covered Property From A Covered Cause Of Loss.**

7. Plaintiff indirectly owns an ambulatory surgery center in San Diego, California (the "Surgery Center").

8. Hartford issued Policy No. 61 UUN DI7605 (the "Policy") for the period from April 30, 2023 to April 30, 2024.

9. PEI is a named insured under the Policy.

10. The Policy includes coverage for both property damage and business interruption loss.

11. Hartford's "all risk" Policy promises payment for "direct physical loss of or direct physical damage" to covered property caused by or resulting from a "Covered Cause of Loss."

12. The Surgery Center is expressly scheduled as covered property under the Policy.

13. The Policy defines "Covered Cause of Loss" to include direct physical loss or direct physical damage that occurs during the Policy Period, unless the loss or damage is excluded.

14. The Policy also provides coverage for the actual loss of "Business Income" the insureds sustain, and the actual, necessary and reasonable "Extra Expense" the insureds incur due to the necessary interruption of the insured's business operations due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at a Scheduled Premises.

15. For purposes of this coverage, "Business Income" includes the insureds' net income and continuing normal operating expenses, including payroll. "Extra Expense" includes the actual, necessary and reasonable expenses the insured incurs that would not have been incurred if there had been no direct physical loss or damage to insured property.

16. In short, Hartford's Policy insures Plaintiff for all risks of physical damage to the Surgery Center occurring during the policy period, including loss of income and extra expenses, unless specifically excluded.

**B.  Hurricane Hilary Caused Physical Loss & Damage To The Surgery Center, Resulting In Substantial Business Income Loss.**

17. On August 20, 2023, Hurricane Hilary made landfall in Mexico's Baja California Peninsula and tracked east of San Deigo as a tropical storm. It was the first tropical storm to strike southern California in 84 years.

18. Tropical Storm Hilary brought torrential rains as well as high sustained winds and gusts that caused extensive property damage, including downed trees, rockslides and broken power lines.

19. At the Surgery Center, the extreme rainfall during Tropical Storm Hilary overwhelmed the roof drains, which had become obstructed and clogged by storm debris.

20. The accumulated weight of the standing water on the roof created leaks and gaps in the roof, allowing water to penetrate the interior of the building.

21. Prior to Tropical Storm Hilary, there is no record of any leaking from the roof at the Surgery Center.

22. The resulting interior water damage was extensive, including damage to ceilings, floors and walls.

23. As a direct result of Tropical Storm Hilary, Plaintiff has incurred not less than $113,599.50 to repair and replace water damaged property at the Surgery Center.

24. Moreover, as a direct result of the physical damage to the Surgery Center, Plaintiff has sustained millions of dollars in lost income and continuing expenses between August 2023 and May 2024.

**C.    Hartford Has Wrongfully Refused Coverage For Plaintiff's Loss & Damage At The Surgery Center Under The Policy.**

25. Hartford received immediate notice of the damage to the Surgery Center from Tropical Hilary (the "Claim") under the Policy by August 23, 2023.

26. Within approximately two weeks, on September 8, 2023, Hartford refused coverage for Plaintiff's Claim on the alleged basis that (1) "the built-up flat roof displayed clear evidence of severe wear and tear"; and (2) "[t]here were only 2 scuppers on the entire roof which cause [sic] the heavy rainfall to pool on the roof and impeded the water from being expelled quickly and therefore seeped into the interior of the building thru the wear and tear cracked seams and seals, gaps and holes…."

27. Based on these factual allegations, Hartford asserted that Plaintiff's Claim was excluded by the Policy's language stating, (1) "[w]e will not pay for loss or damage caused by or resulting from any of the following: … [s]ettling, cracking, shrinking or expansion of buildings or structures, bridges, roadways, walks, patios or concrete or paved surfaces[,] [b]ut if direct physical loss or damage to Covered Property by a Covered Cause of Loss results, we will pay for

the resulting loss or damage caused by that Covered Cause of Loss" (the "Settling & Cracking Exclusion"); and (2) "[w]e will not pay for loss or damage caused directly or indirectly by any of the following, 3.a. through 3.f.[,] [b]ut if direct physical loss or direct physical damage to Covered Property by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. a. Wear and tear, or change in color, texture, or finish; b. Rust, corrosion, decay or deterioration; c. Hidden or latent defect or any quality in property that causes it to damage or destroy itself; d. Maintenance" (the "Wear & Tear Exclusion").

28.     In citing to the Policy's Settling & Cracking Exclusion and the Wear & Tear Exclusion, Hartford did not investigate, identify or explain any facts or evidence suggesting that cracked seams, gaps and holes in the roof at the Surgery Center existed prior to Tropical Storm Hilary.

29.     Hartford also refused coverage for Plaintiff's Claim based upon the following language in the Policy: "We will not pay for loss of or damage to property, as described and limited below. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited below. … (3) The interior of any building or structure, or personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless: a. The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or b. The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure" (the "Rain Limitation").

30. Here, again, in relying on the Policy's Rain Limitation, Hartford did not investigate, identify or explain any facts or evidence suggesting that cracked seams, gaps and holes in the roof at the Surgery Center existed prior to Tropical Storm Hilary.

31. Hartford bears the burden of proof to demonstrate that the physical damage at the Surgery Center is subject to some exclusion or other limitation under the Policy. Without assuming any burden of proof belonging to Hartford, none of the above-referenced exclusions or limitations applies to Plaintiff's Claim.

32. The Rain Limitation that forms the basis for Hartford's denial of coverage does not apply because the interior damage to the Surgery Center was proximately caused by the extreme rains and blocked roof drains—neither of which are excluded perils under Hartford's Policy. Moreover, the physical evidence at Surgery Center shows that the extreme accumulation of water on the roof during Tropical Storm Hilary did cause physical damage to the roof and seams, through which water leaked into the interior of the property causing additional damage.

33. Because the roof at the Surgery Center did not leak prior to Tropical Storm Hilary, the water damage made the subject of this Claim was not caused by and did not result from "settling or cracking" for purposes of the Policy's Settling & Cracking Exclusion. Rather, the extreme weather conditions incident to Tropical Storm Hilary created excessive standing water on the roof of the Surgery Center, which caused the roof seams to separate and break, allowing water to penetrate the interior.

34. Plaintiff's Claim does not seek coverage for loss or damage caused by "wear and tear; rust, corrosion, decay, deterioration; hidden or latent defect or any quality in property that causes it to damage or destroy itself." Even if, *arguendo*, the interior damage was caused by any of the excluded perils of "wear and tear" or "deterioration," which is denied, the resulting

damage from rain is covered by the ensuing loss provision in the Policy's Wear & Tear Exclusion.

35. Plaintiff has repeatedly urged Hartford to reconsider its denial of coverage, but without performing any additional investigation, Hartford has maintained its original refusal to provide any compensation for Plaintiff's Claim.

36. As a result of Hartford's improper denial of coverage, Plaintiff has incurred substantial damages, including the cost of repairing the Surgery Center and millions of dollars in lost income and expense. Plaintiff has also been compelled to retain outside legal counsel to bring this lawsuit to enforce Plaintiff's rights under the Policy and applicable law.

## IV.  CAUSES OF ACTION

**A.  Breach of Contract.**

37. The foregoing allegations are incorporated herein by reference.

38. The Policy is a valid and enforceable contract.

39. PEI is a named insured under the Policy.

40. Plaintiff has satisfied all conditions under the Policy.

41. The Policy unambiguously requires Hartford to pay for Plaintiff's property damage and business income loss at the Surgery Center from Tropical Storm Hilary.

42. Alternatively, the terms of the Policy are ambiguous and must be construed in favor of coverage for Plaintiff.

43. Hartford has breached its contract with Plaintiff by refusing and denying coverage for Plaintiff's Claim.

44. Hartford's breach of the Policy by wrongfully refusing coverage for the Claim has caused Plaintiff substantial damages.

B.  **Chapter 541 of the Texas Insurance Code**

45. The foregoing allegations are incorporated herein by reference.

46. Hartford has violated Section 541.060 of the Texas Insurance Code by (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; (2) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of compromise settlement of a claim; and (3) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

47. By representing that the damage made the subject of this Claim was caused by wear and tear; rust, corrosion, decay, deterioration; hidden or latent defect or any quality in property that causes it to damage or destroy itself, Hartford has violated Section 541.060(a)(1) of the Texas Insurance Code.

48. Hartford has not conducted any investigation, provided any explanation or offered any factual basis for asserting that the water damage at issue originated with any preexisting condition on the roof of the Surgery Center, much less wear and tear, rust, corrosion, decay, deterioration, or hidden or latent defect, in violation of Section 541.060(a)(3), (7) of the Texas Insurance Code.

49. Similarly, Hartford has not conducted any investigation, provided any explanation or offered any factual basis for asserting that (1) the water damage at issue was caused by "rain" as opposed to extreme accumulation of water on the roof; or (2) such accumulation of water on the roof did not cause damage to the roof through which water was allowed to enter the interior of the property, in violation of Section 541.060(a)(3), (7) of the Texas Insurance Code.

50. As a result of Hartford's conduct, Plaintiff has suffered substantial damages as well as attorney's fees and court costs.

51. Hartford has knowingly violated Sections 541.060(a)(1), (3) & (7) of the Texas Insurance Code, and, therefore, Plaintiff seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

C. **Chapter 542A of the Texas Insurance Code.**

52. The foregoing allegations are incorporated herein by reference.

53. Plaintiff has made a claim under the Policy for the loss and damage resulting from Tropical Storm Hilary at the Surgery Center and has satisfied all conditions under the Policy.

54. Pursuant to § 542A.003 of the Texas Insurance Code, Plaintiff provided notice of its intent to pursue a claim against Hartford under Sections 542.060, 542.061 of the Texas Insurance Code on October 7, 2024.

55. Hartford has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code by delaying and/or failing to timely pay the full value of Plaintiff's loss and damage in connection with the Claim.

56. Consequently, Plaintiff is entitled to the damages set forth in Section 542.060(c) of the Texas Insurance Code, including, in addition to the amount of Plaintiff's loss, interest at the rate of five percent per annum added to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees.

D. **Breach of the Duty of Good Faith & Fair Dealing**

57. The foregoing allegations are incorporated herein by reference.

58. Hartford owes Plaintiff a duty of good faith and fair dealing in connection with the handling of Plaintiff's Claim under the Policy.

59. Hartford has violated its duty of good faith and fair dealing by refusing coverage for Plaintiff's Claim without a reasonable basis.

60. Hartford's liability for Plaintiff's Claim is reasonably clear. In spite of this reasonably clear liability, Hartford has (1) misrepresented material facts relating to the cause of the damage to the Surgery Center; (2) failed to provide a prompt or reasonable explanation of the basis of its denial of the Claim; and (3) failed to conduct a reasonable investigation of the cause of the damage to the roof of the Surgery Center.

61. Plaintiff has suffered, and will continue to suffer, actual damages as a result of Hartford's breach of its duty of good faith and fair dealing.

62. Hartford's acts and omissions in this regard, whether committed directly or through the conduct of its agents and representatives, were malicious, fraudulent and/or grossly negligent, justifying the imposition of punitive and exemplary damages.

**E.    Attorneys' Fees.**

63. The foregoing allegations are incorporated herein by reference.

64. Due to the actions and/or omissions of Hartford, Plaintiff has been required to retain the services of the law firm of Haynes and Boone, L.L.P. of Dallas, Texas. Plaintiff has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action.

65. Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and/or §§ 542.060 and/or 541.152 of the Texas Insurance Code, Plaintiff is entitled to an award of reasonable attorneys' fees against Hartford in an amount to be established at trial.

**V.    JURY DEMAND**

66. Plaintiff hereby requests a jury trial pursuant to FED. R. CIV. P. 38.

## VI. PRAYER

WHEREFORE, Plaintiff Pacific Eye Institute, a Medical Group, Inc. respectfully requests that this Court grant the following relief:

(1) Judgment awarding Plaintiff all damages suffered as a result of Defendant's breach of contract;

(2) Judgment awarding Plaintiff all damages suffered as a result of Defendant's violation of Chapter 541 of the Texas Insurance Code;

(3) Judgment awarding Plaintiff all damages suffered as a result of Defendant's violation of Chapter 542A of the Texas Insurance Code;

(4) Judgment awarding Plaintiff all damages suffered as a result of Defendant's breach of the duty of good faith and fair dealing;

(5) Judgment awarding Plaintiff all reasonable and necessary attorneys' fees and expenses incurred in this matter pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code and/or Chapters 541 and/or 542 of the Texas Insurance Code;

(6) Judgment awarding Plaintiff pre-judgment and post-judgment interest in the amount allowed by law;

(7) Judgment awarding Plaintiff all costs of court; and

(8) Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*s/ Micah E. Skidmore*
Micah E. Skidmore
State Bar No. 24046856
micah.skidmore@haynesboone.com
HAYNES AND BOONE, L.L.P.
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone:   (214) 651-5000
Telecopier:   (214) 541-5940

ATTORNEYS FOR PLAINTIFF PACIFIC EYE INSTITUTE, A MEDICAL GROUP, INC.